# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 4340 | DATE | 9/23/2003 |
| CASE TITLE | Nanophase Technologies Corp. vs. Celox, Ltd. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for summary judgment [35-1] is granted. The Court therefore enters judgment in favor of Plaintiff Nanophase and against Defendant Celox in the amount of $400,680, plus pre-judgment interest at the statutory rate of 5% per year from May 31, 2001, the date of Celox's failure to comply with the payment terms of the Contract. This case is hereby terminated. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 4 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 39 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NANOPHASE TECHNOLOGIES CORPORATION, a Delaware Corporation | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 02CV4340 |
| v. | ) ) | Judge Ronald A. Guzman |
| CELOX, LTD., a company incorporated in England, United Kingdom | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Nanophase Technologies Corporation ("Nanophase"), has sued defendant Celox, Ltd. ("Celox"), alleging breach of contract. Nanophase has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons provided in this Memorandum Opinion and Order, the Court grants Nanophase's motion.

## FACTUAL BACKGROUND

On June 18, 2002, Nanophase brought this diversity action, alleging breach of contract.[1] Celox filed an answer and seven affirmative defenses alleging, *inter alia*, that the document entitled "purchase order contract" and signed by the parties was not intended as a contract; that if a contract existed, the party bound to the contract was "Envirox Resources Limited"; that even if a contract existed between Nanophase and Celox, Nanophase did not satisfy its obligations under the contract because the product sample provided by Nanophase to Celox did not conform to the specifications as required

---

[1] Celox, with a timely Notice of Removal filed on June 18, 2002, properly removed this matter to this Court.

1

by the contract; and that Nanophase did not mitigate its damages by selling the product manufactured for Celox.

On July 22, 2003, Nanophase filed a motion for summary judgment. Celox moved to stay the action pending conclusion of its liquidation proceedings in the United Kingdom. Celox's motion to stay was denied on May 29, 2003. Celox has never filed a response to Nanophase's motion for summary judgment.

Before discussing the facts of this case, it is necessary to note the particular importance that Local Rule 56.1 ("LR 56.1") plays in summary judgment motions filed in the Northern District of Illinois. LR 56.1(b) requires the party in opposition to a summary judgment to include a supporting memorandum of law and a statement of material facts that require the denial of summary judgment. LR 56.1(b)(2)-(3). Furthermore, "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(B). The Court of Appeals for the Seventh Circuit has held that a district court may strictly enforce LR 56.1 because of the importance of the rule. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Here, because Celox never filed a response to Nanophase's motion, Nanophase's facts are deemed admitted.

Plaintiff Nanophase is a Delaware corporation with its principal place of business in Illinois; Defendant Celox is a corporation organized under the laws of England, with its principal place of business in Poole, England. In the fourth calendar quarter of 2000, Celox, Nanophase and another English corporation, Oxonica, Ltd. (formerly known as Nanox, Ltd.) ("Oxonica"), discussed formation of a joint venture, to

be known as Envirox Resources Limited ("Envirox"). The proposed goal of the joint venture was to commercialize catalytic fuel additives using nanocrystalline materials, including NanoTek® Cerium Dioxide (the "Product") supplied by Nanophase. In December 2000, however, Nanophase informed Celox that it would not participate as a co-joint venturer in Envirox.

While it did not desire to participate as a co-joint venturer in Envirox, Nanophase expressed interest in negotiating a long-term supply agreement to provide the Product to the joint venturers that were involved in Envirox's creation. Nanophase, Celox and Oxonica began negotiating such an agreement. Although the parties reached an agreement in principal, no long-term supply agreement was ever signed.

At a meeting in London, England on March 6, 2001, Chief Operating Officer and principal shareholder of Celox, Brian L. Morgan ("Morgan"), told Nanophase that Celox needed to own at least 1,500 kilograms of the Product both to effectively negotiate funding for Envirox and for Celox's use in Thailand. Although there was some initial discussion about the contract being between Nanophase and Envirox, Nanophase refused to accept a purchase order contract from Envirox because Envirox's formation and funding was not complete. At the meeting in England on March 6, 2001, Celox told Nanophase that it agreed to buy 1,500 kilograms of the Product for $265.00 per kilogram and to accept responsibility for payment.

The purchase order contract at issue in this case is written on Celox letterhead and names Celox as the "Buyer" and names Nanophase as the "Seller." The purchase order contract requires Nanophase to manufacture and hold 1,500 kilograms of

3

Cerium Dioxcide, FOB Burr Ridge, Illinois by March 30, 2001. The purchase order contract does not identify Envirox as a party to the contract.

The purchase order contract further states that the "Product Specifications" shall be "[a]s per your issued specifications. A typical sample of 1 [kilogram] to be sent to Celox after manufacture for QC & testing purposes." The typical specifications issued by Nanophase for the Product are those stated in Nanophase's Proposed Specifications for Commercial NanoTek Cerium Oxide (Nanox), Specification # 018B.

Morgan, and Ron Hazarika ("Hazarika"), a minority shareholder and the only other director of Celox, signed the purchase order contract "for and on behalf of Celox Limited." Shortly after Celox issued the purchase order contract, Celox and Nanophase agreed to modify the contract by (a) changing the date by which Celox was required to advise Nanophase of Celox's shipping instructions from December 31, 2001 to July 15, 2001, and (b) changing the payment terms from 90 days to 60 days after Nanophase issued its invoice. These modifications to the purchase order contract were made and initialed by Celox in England on or about March 26, 2001.[2]

Nanophase completed its manufacture of 1,512 kilograms of the Product by March 30, 2001. Nanophase segregated a lot in its own warehouse facility for the Product manufactured for Celox. The Product is labeled "Property of Celox, Ltd.," awaiting shipping instructions from Celox, pursuant to the purchase order contract.

On March 31, 2001, Nanophase invoiced Celox for $400,680, which is the purchase order contract extended price for 1, 512 kilograms of the Product at $265 per kilogram. The purchase order contract, as modified, required payment by May 31, 2001,

---

[2] Nanophase subsequently accepted the purchase order contract, as modified, in Illinois.

60 days after Nanophase's invoice dated March 31, 2001. Nanophase, however, received no payment from Celox.

On June 29, 2001, immediately upon receipt of instructions from Celox as to where the sample could be shipped, Nanophase provided Celox with "a typical 1 kilogram sample" of the Product for quality control and testing purposes. Nanophase also provided Celox with a "Certificate of Analysis," independent analysis of the product, and Nanophase Issued Specification #018B for the Product, all pursuant to Nanophase's standard business practices. The Product conformed to Nanophase Issued Specification #018B. Still, as of May 31, 2001, Celox had failed to pay any portion of the invoiced amount due to Nanophase.

Prior to the initiation of this lawsuit, Celox did not deny that the 1 kilogram sample of the Product provided to it by Nanophase conformed to Nanophase Issued Specification #18B. In fact, as of January 2003, Celox had not conducted or obtained any test data provided to it by Nanophase on June 29, 2001.

During various telephone conversations and emails, Hazarika had assured that Celox was committed to honoring the terms of the purchase order contract. Hazarika requested wire transfer information from Nanophase, which Nanophase immediately provided in a letter dated June 11, 2001. Nanophase, however, has received neither payment nor shipment instructions from Celox. In addition, because the Product was

5

manufactured to the specifications requested by Celox, Nanophase has been unable to resell the Product, despite its reasonable efforts to do so.

## JURISDICTION AND VENUE

Jurisdiction for this matter is proper under 28 U.S.C. § 1332(a)(2) because there is diversity of citizenship between Nanophase and Celox, and the amount in controversy exceeds $75,000 exclusive of interest and costs. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a)(2) since a substantial part of the events giving rise to the claim occurred here.

## DISCUSSION

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Carett*, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (internal quotation omitted). Pursuant to Rule 56(c), the court may grant summary judgment if the pleadings, answers, interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Rule 56(c) mandates the granting of summary judgment against the non-moving party who fails to make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322. Thus, there is a "substantial burden" on the non-moving party to make known those material facts that are in dispute. *Advanced Cardiovascular Sys. Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1164 (Fed. Cir. 1993). Furthermore, a district court need not scour the record in search of material facts in

dispute when the non-movant fails to make such a showing. *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989).

In a diversity case, the Court applies federal procedural law and state substantive law. *See Dawn Equip. Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 986-87 (7th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 82 L. Ed. 1188, 58 S. Ct. 817 (1938)). Under Illinois law, in order to properly show a breach of contract, a plaintiff must prove the essential elements which are: (1) the existence of a valid and enforceable contract; (2) the performance by the plaintiff; (3) the breach of the contract by the defendant; and (4) a resulting injury to the plaintiff. *See Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 721 N.E.2d 605, 611, 242 Ill. Dec. 326 (Ill. App. Ct. 1st Dist. 1999); *Elson v. State Farm Fire & Cas. Co.*, 295 Ill. App. 3d 1, 691 N.E.2d 807, 811, 229 Ill. Dec. 334 (Ill. App. Ct. 1st Dist. 1998).

In this case, Nanophase has shown the existence of a valid and enforceable contract in the signed purchase order contract, which is written on Celox letterhead and is signed by both Morgan and Hazarika as Celox's "Director[s]." In determining whether a valid agreement arose between the parties, Illinois law considers the question of the parties' intent to form a contract as a factual question, *see Wagner Excello food, Inc. v. Fearn Int'l, Inc.*, 235 Ill. App. 3d 224, 601 N.E.2d 956, 961, 176 Ill. Dec. 258 (Ill. App. Ct. 1st Dist. 1992), but "once the plaintiff produces evidence establishing a prima facie case that a contract exists, Illinois law shifts the burden of production to the defendant to offer any evidence to the contrary. *Roberts & Shaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 253 (7th Cir. 1996) (citing *Ambrose v. Thornton Township Sch. Trustees*, 274 Ill. App. 3d 676, 654 N.E.2d 545, 550, 211 Ill. Dec. 83 (Ill. App. Ct. 1st Dist. 1995).

7

While Celox's answer denied the existence of a contract and one of it's affirmative defenses stated that the contract legally bound Envirox rather than Celox, Celox has offered no proof to support these denials. A bald and unsupported denial is insufficient to defeat a summary judgment motion. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998). Therefore, because the signed purchase order contract is facially complete and unambiguous and Celox has not provided any proof to substantiate its denials of the contract's validity and enforceability, the purchase order contract is both valid and enforceable.

Nanophase also satisfies the remaining other elements of a claim for breach of contract. Nanophase has established that it has fully performed its obligation under the modified purchase order contract by manufacturing and holding 1,512 kilograms of the Product by March 30, 2001, and by sending a 1 kilogram Product sample, independently determined to be in compliance with Nanophase's "issued specifications," upon Celox's request on June 29, 2001. In addition, the element of the defendant's breach is satisfied in that Celox has never contended that they have satisfied their obligation to provide payment for the goods manufactured by Nanophase; rather, in its complaint, Celox denied any duty to pay Nanophase.

The final element is a resulting injury to Nanophase as a result of Celox's breach of contract. The injury suffered by Nanophase is the amount of the unpaid purchase order contract and the pre-judgment interest. While Celox, in the form of an affirmative defense, asserts that Nanophase "has failed to mitigate its claimed damages," Celox provides no proof to substantiate this claim.

8

As stated above, the Court is neither expected nor required to scour the record for material facts in dispute when the non-movant fails to make such a showing. *Herman*, 870 F.2d at 404. The Court, however, did review those portions of the record cited by Nanophase. After doing so, the Court finds that all material factual statements are supported by the record. Those facts support Nanophase's assertions of existence of a valid and enforceable contract, performance by Celox, non-performance by Celox, and resulting injury to Nanophase. Thus, the Court concludes that Nanophase has met its burden of showing Celox breached the purchase order contract. Because there are no material facts in dispute and Nanophase has met its burden, the Court grants Nanophase's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Nanophase's motion for summary judgment [#35-1] is granted. The Court therefore enters judgment in favor of Nanophase and against Celox in the amount of $400,680, plus pre-judgment interest at the statutory rate of 5% per year from May 31, 2001, the date of Celox's failure to comply with the payment terms of the Contract. This case is hereby terminated. This is a final and appealable order.

SO ORDERED: 9/23/03      ENTERED: /s/ Ronald A. Guzman
                                   Ronald A. Guzman